**In re JOHN M. O'QUINN, P.C.**

No. 12–02–00352–CV.

Court of Appeals of Texas,
Tyler.

June 25, 2003.

Rehearing Overruled July 22, 2003.

J. Clay Gossett, Henderson, for respondent.

Mike Hatchell, Tyler, J.R. Phenix, Henderson, Sam W. Cruse Jr., Billy Shepherd, John D. Vogel, Houston, for relator.

Clay Wilder, Terry L. Scarborough, Cynthia Olson Bourland, Austin, William Fred Hagans, Carl D. Kulhanek Jr., J. Woodfin Jones, Joseph D. Jamail Jr., Ronald D. Krist, Houston, for Real Parties in Interest.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## *OPINION*

JAMES T. WORTHEN, Chief Justice.

Relator John O'Quinn, P.C. ("O'Quinn") brings this petition for writ of mandamus complaining of the trial court's reconsideration of its order compelling arbitration. We conditionally grant the writ.

### BACKGROUND

O'Quinn represented real parties in interest Martha Wood, Patricia Haynes, and Ellie L. Corley (collectively the "RPI") in breast-implant litigation. Each of the RPI signed a contingent fee agreement (collectively the "fee agreements"). O'Quinn settled the claims of the RPI and deducted 1.5 percent of the gross settlement proceeds for expenses that, according to O'Quinn, were common to all clients in the litigation. Consequently, the RPI sued O'Quinn contending, *inter alia*, that the deduction for "common expenses" is not permitted by the fee agreements and therefore O'Quinn's deduction constitutes a breach of the agreements. Further, the RPI allege that O'Quinn represented approximately three thousand women in the litigation, settled the claims of approximately two thousand of those women, and deducted 1.5 percent from the gross settlement proceeds of each settling client. Thus, the RPI filed their lawsuit as a class action on behalf of all clients of O'Quinn who had 1.5 percent of their settlement proceeds deducted for "common expenses."

The fee agreements contain an arbitration provision providing that "[a]ny and all disputes, controversies, claims or demands arising out of or relating to [the] Agreement or any provision [thereof] ... or in any way relating to the relationship between Attorneys and Client ... shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association." On November 3, 2000, the trial court granted various arbitration motions filed by O'Quinn and ordered that "all claims and causes of action ... shall be submitted to American Arbitration Association for binding arbitration under the Federal Arbitration Act." The order also stayed the proceedings in the trial court "pending completion of and final decisions in the binding arbitration" and expressly provides that the trial court "has not made a decision or finding regarding class status or class certification." The RPI sought mandamus review of the November 3 order from this court and from the Texas Supreme Court. Both courts denied relief. However, arbitration did not occur.

On November 4, 2002, the trial court, on motion of the RPI, reconsidered its prior order (the "first order") and signed a second order. The second order referred "[a]ll claims and causes of action [pleaded by the RPI in their] Third Amended Petition, specifically including, without limita-

tion, the class action claims" to arbitration under the Federal Arbitration Act (the "FAA"). Further, the order stated that

> [t]he Arbitrator is specifically authorized to have the *full limit of authority to determine the issues related to class action* and to address and resolve all issues related to due process rights of putative class members *and to determine all class action issues,* including, without limitation, the issue of class certification, the issue of the definition of the class, and the issue of whether proceeding on class or individual claims is proper (emphasis added).

On November 7, 2002, O'Quinn filed a motion for rehearing, which the trial court denied. On December 4, 2002, O'Quinn filed a petition for writ of mandamus requesting this court to enter an order requiring the trial court to (1) vacate its order of November 4, 2002 (the "second order"); (2) deny in its entirety the motion for reconsideration filed by the RPI; and (3) refer this case to binding, separate arbitrations.

### AVAILABILITY OF MANDAMUS

Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Daisy Mfg. Co.,* 17 S.W.3d 654, 658 (Tex.2000) (orig. proceeding). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (citing *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)). A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker,* 827 S.W.2d at 840. Consequently, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* Where an arbitration

agreement is governed by the Federal Arbitration Act (the "FAA"), mandamus is the appropriate means to assert that a trial court has failed to enforce the agreement according to its terms. *See, e.g., In re Louisiana Pacific Corp.,* 972 S.W.2d 63, 65 (Tex.1998) (citing *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994) and *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992)).

### APPLICABLE LAW

It is undisputed that the Federal Arbitration Act (the "FAA") applies in this case. *See* 9 U.S.C.A. §§ 1–16 (West 1999). The FAA creates a body of federal substantive law that is applicable in both state and federal courts. *Southland Corp. v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). When interpreting an arbitration agreement, courts should generally apply state-law principles. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Furthermore, federal procedure does not apply in Texas courts; Texas procedure controls, even when the FAA governs the interpretation of the agreement. *Tipps,* 842 S.W.2d at 272.

### SUBJECT MATTER JURISDICTION

During oral argument, O'Quinn contended for the first time that the trial court lacked subject matter jurisdiction to reconsider its first order. Alleging a lack of subject matter jurisdiction raises fundamental error; consequently, the issue may be raised at any time. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993). Therefore, we first address the merits of O'Quinn's jurisdictional complaint.

O'Quinn maintains that an order referring a case to arbitration is generally considered "final" for judicial purposes, and the trial court's plenary judicial power over the merits of the case ceases. Thus, according to O'Quinn, the trial court lost plenary power thirty days after it signed the first order. As a result, his argument continues, the trial court was without jurisdiction to sign its second order, and therefore the order is void. In support of his argument, O'Quinn cites cases holding that a trial court has power to set aside an order of nonsuit for only thirty days after the order is signed. *See America's Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 878 (Tex.App.-San Antonio 1995, orig. proceeding); *Mo. Pac. R. Co. v. Whitaker*, 815 S.W.2d 348, 349 n. 2 (Tex.App.-Tyler 1991, orig. proceeding).

The RPI, on the other hand, contend that the trial court's first order was not a final judgment because "the order plainly states that the court was reserving the class action questions for another day...." Therefore, they argue, the first order is interlocutory because it does not dispose of all issues in the instant case, and the trial court had jurisdiction to reconsider the order. Furthermore, they distinguish an order granting a nonsuit and an order compelling arbitration because a nonsuit terminates the litigation while an order compelling arbitration does not.

 Arbitration has been defined as: a contractual proceeding by which the parties to a controversy or dispute, in order to obtain a speedy and inexpensive final disposition of matters involved voluntarily select arbitrators or judges of their own choice, and by consent submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law.

*Tipps*, 842 S.W.2d at 268. Thus, an order compelling arbitration contemplates continuing resolution through the arbitration. *Brooks v. Pep Boys Automotive Supercenters*, 104 S.W.3d 656, 660 (Tex.App.-Houston [1st Dist.] 2003, no pet.). By compelling arbitration, the trial court simply takes the first step in the ultimate disposition of the dispute between the parties. *Materials Evolution Dev., USA, Inc. v. Jablonowski*, 949 S.W.2d 31, 33 (Tex.App.-San Antonio 1997, no writ). However, an order compelling arbitration is not a final order because it does not dispose of all parties or issues presented. *E.g., Brooks*, 104 S.W.3d at 660; *Jablonowski*, 949 S.W.2d at 33; *Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co.*, 940 S.W.2d 150, 153 (Tex.App.-San Antonio 1996, no writ); *Gathe v. Cigna Healthplan of Texas, Inc.*, 879 S.W.2d 360, 363 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

 As a general rule, a trial court retains plenary power over its interlocutory orders until a final judgment is entered. *Fruehauf v. Carrillo*, 848 S.W.2d 83, 84 (Tex.1993). Additionally, a trial court has the inherent authority to change or modify any interlocutory order until its plenary power expires. *Mendez v. San Benito/Cameron County Drainage Dist. No. 3*, 45 S.W.3d 746, 754 (Tex.App.-Corpus Christi 2001, pet. denied). Referral of a matter to arbitration does not deprive the trial court of jurisdiction, but merely limits the manner in which a trial court may exercise its jurisdiction. *See, e.g., In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex.2002) (orig. proceeding) (trial court compelling arbitration must also stay its own proceedings); *Transwestern Pipeline Co. v. Blackburn*, 831 S.W.2d 72, 75 (Tex.App.-Amarillo 1992, orig. proceeding) (after compelling arbitration, trial court not divested of jurisdiction but abused its discretion by ordering dis-

covery after selection of arbitration panel). Therefore, the trial court had plenary power at the time the second order was signed.

■ O'Quinn argues the general rule relating to reconsideration of interlocutory orders should not apply here because if a trial court's power over a referral to arbitration does not end at some point, the trial court could, after arbitration has begun, change its mind and stop the arbitration, withdraw issues, or add issues. This, in turn, would defeat the purpose of arbitration, which is "to get parties out of the judicial system and provide a speedy, efficient, and less costly method to resolve the parties' dispute." We agree that such a result would be contrary to the purpose of arbitration. However, a trial court cannot use its jurisdiction to unnecessarily interfere with the arbitration process agreed upon and instituted. *Blackburn,* 831 S.W.2d at 78. This rule provides a means for preventing the result O'Quinn anticipates.

We hold that the trial court had subject matter jurisdiction to enter the second order. O'Quinn's argument to the contrary is overruled. We now turn to the merits of O'Quinn's mandamus petition.

### ABUSE OF DISCRETION

In their motion for reconsideration, the RPI alleged that "[c]ompelling arbitration deprives [the RPI] of a remedy, because the American Arbitration Association ("AAA") takes the position that the trial court must first certify the class before referring [the case] to arbitration." To support this allegation, the RPI attached a copy of a letter from counsel for the RPI to the AAA summarizing the organization's position. In view of the AAA's stance, the RPI requested the trial court to reconsider its decision compelling arbitration and allow the case to proceed to trial in state court. Alternatively, the RPI requested that the trial court reconsider its order in part, allow pre-certification discovery, conduct a class certification hearing, and then refer the case to arbitration.

At the hearing on the motion to reconsider, counsel for the RPI stated that the AAA had taken the position that "they have no procedures for [certifying a class]"; "that there is no precedent . . . for a class certification hearing inside of arbitration"; and that "[t]hey've never done it before." Counsel also represented that "the AAA want this Court to decide that, and they've so told us, and that they will take this case from that point forward, only because we're in unchartered territory." The trial court granted the motion to reconsider, but referred "all claims and causes of action [pleaded by the RPI in their] Third Amended Petition, specifically including, without limitation, the class action claims." Further, the order states that the arbitrator has "the full limit of authority to determine the issues related to class action" and that the arbitrator is authorized to "to determine all class action issues . . . ."

O'Quinn asserts that the trial court abused its discretion by signing this order because the arbitrator does not have, and cannot be given, the authority to determine class certification issues. Based upon our review of the record, we agree.[1]

### *Determination of Class Certification Issues*

■ The Supreme Court has held that "[j]ust as [parties] may limit by contract

---

1. Our holding on this issue is limited to the particular facts of this case. We do not address whether, as a general proposition, class certification is a matter for the trial court or for the arbitrator. Furthermore, the holding in *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) is inapplicable here.

the issues which they will arbitrate, ... so too may they specify by contract the rules under which arbitration will be conducted." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). Preventing the enforcement of agreements to arbitrate where the parties select rules different from those set forth in the FAA would be "quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Id.*, 489 U.S. at 479, 109 S.Ct. at 1255–56.

▬▬▬▬ Once the parties specify which rules govern arbitration, they are bound by those rules. *In re Nat'l Health Ins. Co.*, 109 S.W.3d 552, 556 (Tex.App.-Tyler 2002, orig. proceeding) (not yet released for publication); *see also In re Oakwood Mobile Homes*, 987 S.W.2d 571, 574 (Tex. 1999). Furthermore, the trial court has no discretion to modify or otherwise contravene the specified rules. *See id.*, 109 S.W.3d at 556. The fee agreements in the case at hand provide that arbitration will be conducted in accordance with the AAA Commercial Arbitration Rules then in effect. As O'Quinn points out, the RPI established at the hearing on their motion to reconsider that (1) the AAA has no procedure for certifying a class and that (2) a class arbitration cannot proceed until the trial court has first certified the class. Therefore, according to the AAA's procedures for conducting arbitration pursuant to the rules designated by the parties, issues relating to class certification must be determined by the trial court. Conse-

quently, we agree with O'Quinn that, under the facts of the instant case, the arbitrator cannot be authorized to "determine the issues related to class action." [2] The trial court's attempt to give the arbitrator that authority contravenes the designated rules, thereby constituting an abuse of discretion.[3] *See id.*, 109 S.W.3d at 556–57. Having determined that the trial court abused its discretion, we now consider whether O'Quinn has an adequate remedy by appeal.

### ADEQUATE REMEDY BY APPEAL

A court may vacate an arbitrator's award under the circumstances set forth in the FAA. *See* 9 U.S.C.A. § 10 (West 1999). However, the FAA contains no provision allowing review of a trial court's actions in state court. *Cf.* 9 U.S.C.A. § 10; *see In re Louisiana Pacific Corp.*, 972 S.W.2d 63, 65 (Tex.1998). O'Quinn complains that the trial court erred in authorizing the arbitrator to determine issues related to class action. Because Section 10 of the FAA authorizes review of the acts of arbitrators only, O'Quinn's complaint is outside the scope of permitted review. *See id.* Consequently, O'Quinn has no adequate remedy by appeal.

The RPI contend, however, that if the class claims are erroneously included in the arbitration, O'Quinn can appeal from the award, allege that the arbitrator exceeded its authority in deciding class issues, and seek to vacate the portion of the award attributable to the class claims. *See* 9 U.S.C.A. § 10(a)(4) (West 1999); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(3)(A) (Vernon Supp.2003).

---

**2.** The threshold inquiry is whether the fee agreements permit class arbitration. *See Local 1351 Int'l Longshoremen's Ass'n v. Sea-Land Serv., Inc.*, 214 F.3d 566, 570–71 (5th Cir.2000); *Del E. Webb Const. v. Richardson Hosp. Auth.*, 823 F.2d 145, 150 (5th Cir.1987).

**3.** The record indicates that the AAA declined to address class certification because it has no procedure for doing so and not because it lacked a delegation of authority from the trial court.

Such an appeal, according to the RPI, "would make O'Quinn whole because the substantive individual claims against him are going to be arbitrated in any event." We decline to speculate about whether the result suggested by the RPI would occur, but assume, for purposes of argument, that such is the case. Even so, our conclusion regarding whether O'Quinn has an adequate remedy by appeal does not change.

■■■■ An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ. *Walker,* 827 S.W.2d at 842. Mandamus will issue when the failure to do so would "vitiate and render illusory the subject matter of an appeal." *Tipps,* 842 S.W.2d at 272. In the case at hand, AAA policy for administering the rules designated by the parties requires the trial court to determine all class action issues prior to arbitration. An appeal of the arbitrator's decisions on the issues cannot restore O'Quinn's right to have those issues resolved by the trial court. Moreover, requiring parties to participate in classwide arbitration when they have not agreed to do so "disrupts the negotiated risk/benefit allocation and directs [the parties] to proceed with a different sort of arbitration." *Champ v. Siegel Trading Co., Inc.,* 55 F.3d 269, 277 (7th Cir.1995) (citing *New England Energy, Inc. v. Keystone Shipping Co.,* 855 F.2d 1, 10 (1st Cir.1988) (Selya, J., dissenting)). Thus, if O'Quinn is erroneously ordered to participate in classwide arbitration prior to appeal, he has been permanently deprived of the benefit of the arbitration clause and the type of arbitration for which he bargained. *See Tipps,* 842 S.W.2d at 272–73. This result "vitiate[s] and render[s] illusory the subject matter of an appeal." *See id.*

### Conclusion

Based upon our review of the record and the foregoing analysis, we hold that the trial court's order signed on November 4, 2002 reconsidering its prior order compelling arbitration constitutes an abuse of discretion. Having determined that O'Quinn does not have an adequate remedy by appeal, we conditionally grant mandamus relief. We trust that the trial court will vacate its November 4 order; the writ will issue only if it fails to do so.