# IN THE SUPREME COURT OF TEXAS

No. 18-0781

ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., PETITIONER,

v.

PANDA POWER GENERATION INFRASTRUCTURE FUND, LLC, D/B/A PANDA POWER
FUNDS, ET AL., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

*~ consolidated for oral argument with ~*

No. 18-0792

IN RE PANDA POWER INFRASTRUCTURE FUND, LLC, D/B/A PANDA POWER FUNDS, ET
AL., RELATORS

ON PETITION FOR WRIT OF MANDAMUS

**Argued September 15, 2020**

JUSTICE BOYD delivered the opinion of the Court, in which JUSTICE BLACKLOCK, JUSTICE BUSBY, JUSTICE BLAND, and JUSTICE HUDDLE joined.

JUSTICE BLACKLOCK filed a concurring opinion.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE DEVINE joined.

JUSTICE GUZMAN filed a dissenting opinion, in which JUSTICE LEHRMANN and JUSTICE DEVINE joined.

These two petitions—one for writ of mandamus and the other for review—arise from a lawsuit several Panda Power companies[1] filed against the Electric Reliability Council of Texas, Inc. (ERCOT). The underlying suit involves allegations of fraud and fiduciary breach, but these petitions challenging the court of appeals' review of a trial court's interlocutory order present a medley of jurisdictional issues. We granted review and consolidated the two causes because these issues—which include whether the Texas Public Utility Commission has exclusive jurisdiction over Panda's claims and whether sovereign immunity applies to ERCOT and protects it from Panda's suit—are important to the parties and to our state's jurisprudence. But after the court of appeals rendered its decision, and before the parties asked us to review that decision, the trial court entered a final judgment in the underlying suit, and that judgment is now the subject of a separate appeal pending in the court of appeals. Because the trial court's interlocutory order merged into the final judgment and no longer exists, we cannot grant the relief the parties seek. As a result, any decision we might render would constitute an impermissible advisory opinion, and these consolidated causes are moot. However much we may desire to provide answers in these now-moot interlocutory proceedings, the constitution prohibits us from doing so, and we must respect that prohibition. We must therefore dismiss both the petition for writ of mandamus and the petition for review for want of jurisdiction.

---

[1] The suit identifies thirteen Panda companies as plaintiffs: Panda Power Generation Infrastructure Fund, LLC (d/b/a Panda Power Funds); Panda Sherman Power Holdings, LLC; Panda Sherman Power Intermediate Holdings I, LLC; Panda Sherman Power Intermediate Holdings II, LLC; Panda Sherman Power, LLC; Panda Temple Power Holdings, LLC; Panda Temple Power Intermediate Holdings I, LLC; Panda Temple Power Intermediate Holdings II, LLC; Panda Temple Power, LLC (n/k/a Temple Generation I, LLC); Panda Temple Power II Holdings, LLC; Panda Temple Power II Intermediate Holdings I, LLC; Panda Temple Power II Intermediate Holdings II, LLC; and Panda Temple Power II, LLC. We will refer to them collectively as Panda.

# I.
# Background

ERCOT serves as the independent system operator for the Texas power region.[2] Because ERCOT manages only intrastate transmission, it is generally not subject to federal law or to oversight by the Federal Energy Regulatory Commission.[3] Instead, Texas law governs ERCOT and makes it "directly responsible and accountable to the" Public Utility Commission of Texas.[4]

Among its many other responsibilities, ERCOT is required to publish "resource adequacy reports," at least annually, providing a five-year forecast of the Texas power region's ability to generate and transmit sufficient electricity to meet projected demands.[5] Fulfilling this duty, ERCOT publishes a "Report on Capacity, Demand, and Reserves" twice a year, in May and December.[6] These "CDR Reports" provide predictions on future electricity demands within the Texas power region and the region's ability to supply sufficient electricity to meet those demands. Participants in the electric industry rely on ERCOT's CDR Reports when deciding, for example, whether to invest in new generation plants or transmission facilities.

In 2011 and 2012, ERCOT's CDR Reports projected a likelihood of severe energy shortfalls. Panda alleges it relied on these reports when it decided to invest $2.2 billion to build

---

[2] *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 61 (Tex. 2014).

[3] *See Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n of Tex.*, 507 S.W.3d 706, 708 n.1 (Tex. 2017); *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 312 (Tex. 2001); Sean Farrell, *Federal Energy Regulatory Commission Order 1000: Summary of Issues, Requirements, and How It Affects Texas*, 14 TEX. TECH ADMIN. L.J. 119, 120–21 (2012).

[4] TEX. UTIL. CODE § 39.151(d).

[5] 16 TEX. ADMIN. CODE § 25.505(c); *see also* TEX. UTIL. CODE § 39.155(b).

[6] Previous CDR Reports are available at http://www.ercot.com/gridinfo/resource.

two new power plants in Temple and one in Sherman. After Panda began construction, however, ERCOT revised its forecasts and—instead of projecting a shortfall—now predicted an excess of generation capacity in the ERCOT region. Claiming that ERCOT's original CDR Reports misled it to invest in losing endeavors, Panda sued ERCOT and three of its officers for fraud, negligent misrepresentation, and breach of fiduciary duty.

ERCOT responded by filing a plea to the jurisdiction arguing that the Public Utility Commission has exclusive jurisdiction over Panda's claims. Although the Commission filed an amicus brief supporting ERCOT's plea, the trial court denied it. Soon thereafter, we explained in *University of the Incarnate Word v. Redus* that the issues of (1) whether a private entity qualifies as a "governmental unit" under the Texas Tort Claims Act and (2) whether sovereign immunity applies to and protects the private entity are "separate questions with separate analytical frameworks." 518 S.W.3d 905, 911 (Tex. 2017). Relying on *Redus*, ERCOT filed a motion for reconsideration and alternative amended jurisdictional plea, arguing that sovereign immunity applies and bars Panda's claims. The trial court denied ERCOT's motion and amended plea.

ERCOT appealed the trial court's denial order. As a general rule, subject only to "a few mostly statutory exceptions," parties may only appeal a final judgment. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders*, 603 S.W.3d 385, 387 (Tex. 2020). ERCOT asserted, however, that the court of appeals had interlocutory jurisdiction because ERCOT qualifies as a "governmental unit" under the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (allowing interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined" in the Tort Claims Act). At the same time, as an alternative, ERCOT filed a petition for writ of mandamus in the court of appeals, arguing that

4

sovereign immunity bars Panda's claims even if ERCOT is not a governmental unit. After consolidating the two cases, the court of appeals held that ERCOT is not a governmental unit and dismissed ERCOT's interlocutory appeal for want of jurisdiction, but it granted ERCOT's mandamus petition, holding that sovereign immunity applies and bars Panda's claims. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC* (*Panda I*), 552 S.W.3d 297, 309, 320 (Tex. App.—Dallas 2018).

Based on its holding that sovereign immunity applies, the court of appeals entered judgment ordering the trial court to dismiss Panda's claims within thirty days. Panda filed a petition for writ of mandamus in this Court challenging the court of appeals' holding that sovereign immunity bars Panda's claims (No. 18-0792). ERCOT filed a conditional petition for review challenging the court of appeals' holding that ERCOT is not a governmental unit under the Tort Claims Act (No. 18-0781). We requested briefing in both cases, granted ERCOT's petition for review, and consolidated the causes for oral argument.

## II.
## Mootness

On April 24, 2018—eight days after the court of appeals decided *Panda I*, four months before Panda filed its mandamus petition in this Court, and five months before ERCOT filed its conditional petition for review—the trial court entered a final judgment dismissing Panda's claims as the court of appeals had ordered.[7] Three days later, on April 27, 2018, Panda filed an emergency motion in *Panda I*, asking the court of appeals to stay its mandamus order and require the trial

---

[7] Panda asserts that the trial court unexpectedly entered its final judgment while the parties were discussing an agreement to stay the court of appeals' order while Panda requested relief in this Court. ERCOT asserts that it agreed to a stay but Panda failed to act expeditiously to obtain the stay before the trial court acted on the court of appeals' order.

court to set aside its final judgment. The court of appeals denied that motion on May 2, 2018. On May 23, 2018, twenty-nine days after the trial court entered its final judgment, Panda filed a notice of appeal from the final judgment, initiating a new proceeding in the court of appeals. *See Panda Power Generation Infrastructure Fund, LLC, v. Elec. Reliability Council of Tex., Inc.* (*Panda II*), No. 05-18-00611-CV (Tex. App.—Dallas filed May 28, 2018).

A week later, on May 31, 2018, Panda filed a motion asking the court of appeals to rehear *Panda I* en banc. The court denied that motion on July 10, 2018. On August 15, 2018, Panda filed a motion to abate *Panda II* "in the interest of judicial economy" until this Court resolved *Panda I*. The court of appeals denied the abatement, requested briefs, and scheduled oral argument. On August 24, 2018, Panda filed its mandamus petition in this Court (No. 18-0792), challenging the court of appeals' order in *Panda I*, which addressed the trial court's interlocutory order. In a footnote, Panda's mandamus petition mentioned in passing that the trial court had dismissed Panda's suit as the court of appeals had ordered, and that Panda had filed a "protective appeal" from the dismissal.

On September 24, 2018, ERCOT filed its conditional petition for review (No. 18-0781). In its petition, ERCOT explained that the trial court had entered a final judgment, that Panda had appealed from that final judgment in a separate appellate proceeding, and that the trial court had lost plenary jurisdiction over the case. ERCOT suggested that this Court "may therefore lack jurisdiction over Panda's mandamus petition [in No. 18-0792] because it challenges an interlocutory trial-court order that has since been superseded by a final judgment." On January 4, 2019, ERCOT filed a response to Panda's mandamus petition, again suggesting that "this mandamus proceeding may be moot" because "the trial court's original order denying ERCOT's

plea has already been vacated, a contrary judgment has been rendered, and the trial court's plenary power has long ago expired," so "it is difficult to see how vacating the court of appeals' order could have any effect." On January 28, 2019, Panda filed a reply in support of its mandamus petition, acknowledging that "this case comes to the Court in an unusual procedural posture" but insisting "that does not make this case moot or unworthy of review."

Eight days later, on February 5, 2019, we requested briefs addressing Panda's mandamus petition. On April 5, 2019, we requested briefs addressing ERCOT's conditional petition for review. In its brief in response to Panda's mandamus petition, filed on August 7, 2019, ERCOT asserted that, "because the trial court no longer has plenary power over the underlying proceeding, an order from this court would not redress Panda's alleged injury," but "[n]evertheless ERCOT, like Panda, would prefer a final resolution to this dispute." On June 5, 2020, we granted ERCOT's conditional petition for review and set both it and Panda's mandamus petition for oral argument, which occurred on September 15, 2020. On October 16, 2020, we requested that the parties file supplemental briefs specifically addressing the mootness issue, and the parties filed those briefs as requested on November 2, 2020.[8]

---

[8] Any suggestion that the Court has unnecessarily delayed the resolution of these consolidated causes is groundless, as is any suggestion that any unusual delays have been objectionable or detrimental to the parties. Although these petitions have been pending in this Court for two-and-a-half years, the parties themselves requested and received sixteen separate thirty-day extensions of their filing deadlines. In No. 18-0781 (involving ERCOT's conditional petition for review), ERCOT requested one extension of the deadline to file its petition, two extensions of the deadline to file its reply in support of its petition, two extensions of the deadline to file its brief on the merits, and two extensions of the deadline to file its reply brief, while Panda requested one extension of the deadline to file its response and one extension of the deadline to file its brief on the merits. Those extensions comprise nine of the thirty-one months that have passed since since ERCOT first filed in this Court. And in No. 18-0792 (involving Panda's mandamus petition), ERCOT requested two extensions of the deadline to file a response to Panda's petition, and two extensions of the deadline to file its brief on the merits, while Panda requested two extensions of the deadline to file its brief on the merits and one extension of the deadline to file its reply brief. All sixteen of these requests were unopposed by the other party. While the parties have expressed the hope that we can decide the issues in these consolidated causes, they have never demonstrated the urgency the dissenting Justices now argue should permit us to disregard or impermissibly expand our jurisdictional limits.

Meanwhile, on October 22, 2019, the court of appeals heard oral arguments in *Panda II*. But nine days after hearing arguments, the court granted Panda's August 15, 2018 motion to abate *Panda II* pending our final disposition of the two petitions now before us, which challenge the court of appeals' judgment in *Panda I*.

Because Panda's mandamus petition and ERCOT's petition for review both challenge the court of appeals' decision in *Panda I*, which addressed the trial court's interlocutory order denying ERCOT's jurisdictional plea, we asked the parties to provide supplemental briefs specifically addressing the issue of whether the trial court's subsequent entry of a final judgment rendered these proceedings moot. *See Heckman v. Williamson County*, 369 S.W.3d 137, 166–67 (Tex. 2012) (noting that a suit can become moot at any time, including on appeal). If it did, then we lack jurisdiction to decide these causes. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018).

The mootness doctrine—a constitutional limitation founded in the separation of powers between the governmental branches—prohibits courts from issuing advisory opinions. *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). A case becomes moot when (1) a justiciable controversy no longer exists between the parties, (2) the parties no longer have a legally cognizable interest in the case's outcome, (3) the court can no longer grant the requested relief or otherwise affect the parties' rights or interests, or (4) any decision would constitute an impermissible advisory opinion. *Harper*, 562 S.W.3d at 6 (first quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); and then quoting *Heckman*, 369 S.W.3d at 162).[9] Under these principles, a trial court's entry of a final judgment will often moot

---

[9] Although JUSTICE GUZMAN correctly observes that a case becomes moot when "the parties lack (1) a justiciable controversy between them or (2) a legally cognizable interest in the outcome," *post* at ___ (GUZMAN, J., dissenting), she fails to acknowledge that a case *also* becomes moot when, "for any reason," the Court's judgment

an interlocutory appeal or mandamus petition that challenges a prior trial-court order. *See Roccaforte v. Jefferson County*, 341 S.W.3d 919, 922 (Tex. 2011) (quoting *Hernandez v. Ebrom*, 289 S.W.3d 316, 319 (Tex. 2009)).

For example, a final judgment granting a permanent injunction typically moots a pending interlocutory appeal from a prior order granting a temporary injunction. *Richards v. Mena*, 820 S.W.2d 372, 372 (Tex. 1991).[10] Similarly, a final judgment terminating parental rights moots the parent's pending appeal from a prior temporary order authorizing the emergency removal of the child from the parent's custody. *In re E.R.W.*, 528 S.W.3d 251, 257 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). And a final judgment enforcing a settlement agreement in a parental-termination case moots the child's foster parents' pending mandamus petition challenging a prior order striking their petition to intervene, because "there is no longer a justiciable controversy between the parties that would be resolved by the petition for mandamus relief." *In re Salverson*, No. 01-12-00384-CV, 2013 WL 557264, at *1 (Tex. App.—Houston [1st Dist.] Feb. 14, 2013, orig. proceeding) (per curiam) (mem. op.). In each of these examples, the trial court's final judgment mooted the *substantive issue* the interlocutory appeal or mandamus petition presented. Once the trial court entered a permanent injunction or terminated the parent's rights, the issue of whether the trial court erred by granting a temporary injunction, authorizing the child's

---

can have no "practical legal effect" on an "*existing* controversy." *McNeill v. Hubert*, 23 S.W.2d 331, 333 (Tex. 1930) (emphasis added); *see also Harper*, 562 S.W.3d at 6 ("Mootness occurs when events make it impossible for the court to grant the relief requested or otherwise 'affect the parties' rights or interests.'"); *Heckman*, 369 S.W.3d at 162 ("Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests."); *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam) ("Generally, an appeal is moot when the court's action on the merits cannot affect the rights of the parties.").

[10] *See also Isuani v. Manske-Sheffield Radiology Grp., P.A.*, 802 S.W.2d 235, 236–37 (Tex. 1991).

emergency removal, or denying the foster parents' intervention no longer presented a live controversy that was relevant to the resolution of the parties' then-current dispute.[11]

As Texas courts of appeals have repeatedly recognized, however, a trial court's entry of a final judgment can moot a pending interlocutory appeal or mandamus petition even when the final judgment does not moot the substantive issue the interlocutory appeal or mandamus petition presents. For example, the trial court's entry of a final summary judgment in the plaintiff's favor moots the defendant's pending interlocutory appeal from a prior order denying the defendant's special appearance, because the prior order merges into the final judgment. *See Chen v. Razberi Techs., Inc.*, No. 05-19-01551-CV, 2020 WL 6390507, at *2 (Tex. App.—Dallas Nov. 2, 2020, no pet. h.) (mem. op.).[12] Similarly, a final judgment granting the defendant's motion to dismiss moots the defendant's pending interlocutory appeal from a prior order denying the dismissal motion and refusing to award attorney's fees, again because the prior order merges into the final judgment. *Scott L. Ortho Corp. P.C. v. Marshall*, No. 03-19-00575-CV, 2019 WL 6693770, at *1 (Tex. App.—Austin Dec. 6, 2019, no pet.) (mem. op.). And a final judgment entered in the plaintiff's favor moots the defendant's pending interlocutory appeal from a prior order denying the defendant's jurisdictional plea for the same reason: the interlocutory order merges into the final judgment, and the appellate court's decision in the interlocutory appeal "could not have a practical

---

[11] *See also Roccaforte*, 341 S.W.3d at 924 n.9 (citing additional cases in which "further proceedings mooted the [substantive] issues raised" in an interlocutory appeal).

[12] *See also Henry v. Flintrock Feeders, Ltd.*, No. 07-04-0224-CV, 2005 WL 1320121, at *1 (Tex. App.—Amarillo June 1, 2005, no pet.) (mem. op.).

effect on the final judgment." *Tex. Dep't of Transp. v. Flores*, 513 S.W.3d 826, 827 (Tex. App.—El Paso 2017, no pet.).[13]

In these examples, the parties' controversy over the substantive issue remained live after the trial court entered a final judgment, even though the final judgment rendered the appeal from the interlocutory order "procedurally moot." *Alexander*, 2005 WL 8147253, at *1 (noting that "the issue of the denial of the plea to the jurisdiction is not moot," but "the purpose of an interlocutory appeal has been mooted by the final judgment").[14] When that occurs, the complaining party's remedy is to raise the live substantive issue in an appeal from the final judgment. *Id.* (explaining that the live substantive issue "may be raised by appellant in its appeal from the final judgment").[15]

As in these examples, the parties' controversy over the substantive jurisdictional issues in this case—whether sovereign immunity bars Panda's claims and, if not, whether the Public Utility

---

[13] *See also City of Lancaster v. White Rock Com., LLC*, No. 05-16-00842-CV, 2017 WL 2875520, at *1 (Tex. App.—Dallas July 6, 2017, no pet.) (mem. op.); *Tex. Dep't of Pub. Safety v. Alexander*, No. 03-04-00439-CV, 2005 WL 8147253, at *1 (Tex. App.—Austin Apr. 14, 2005, no pet.) (mem. op.). Other examples abound. *See, e.g.*, *In re Gee*, No. 01-05-00851, 2006 WL 2640989, at *1 (Tex. App.—Houston [1st Dist.] Sept. 11, 2006, orig. proceeding) (mem. op.) (holding final judgment awarding interpleaded funds to plaintiff mooted defendant's mandamus petition challenging prior order allowing interpleader and disbursing some but not all interpleaded funds to plaintiff); *Lincoln Prop. Co. v. Kondos*, 110 S.W.3d 712, 715–16 (Tex. App.—Dallas 2003, no pet.) (holding final summary judgment against plaintiffs mooted defendant's interlocutory appeal from prior order certifying proposed class); *Siebenmorgen v. Hertz Corp.*, No. 14-97-01012-CV, 1999 WL 21299, at *2 (Tex. App.—Houston [14th Dist.] Jan. 21, 1999, no pet.) (not designated for publication) (holding final judgment against plaintiff mooted plaintiff's interlocutory appeal from prior order denying plaintiff's motion for class certification); *In re Alexis*, No. 05-97-01916-CV, 1998 WL 564933, at *1 (Tex. App.—Dallas Sept. 8, 1998, orig. proceeding) (not designated for publication) (holding final judgment against plaintiff mooted plaintiff's mandamus petition challenging prior pretrial-discovery order because discovery order merged into the final judgment and trial court lost power to modify it when it lost plenary jurisdiction).

[14] *See also Scott L. Ortho Corp.*, 2019 WL 6693770, at *1 ("While the issue of attorney's fees and costs related to the denial of appellants' motion to dismiss is not moot, the purpose of the interlocutory appeal has been mooted by the final judgment."); *City of Lancaster*, 2017 WL 2875520, at *1 ("Although we dismiss this interlocutory appeal as moot, the issue of the denial of the plea to the jurisdiction is not moot.").

[15] *See also Flores*, 513 S.W.3d at 827 ("TXDOT must appeal the final judgment in order to challenge the denial of its plea to the jurisdiction."); *City of Lancaster*, 2017 WL 2875520, at *1 ("The City may raise that issue in its appeal from the final judgment."); *Lincoln Prop.*, 110 S.W.3d at 716 (explaining that the parties' rights are instead "subject to the disposition of the appeal concerning the final judgment"); *Siebenmorgen*, 1999 WL 21299, at *2 (noting that plaintiff failed to appeal the final judgment); *Alexis*, 1998 WL 564933, at *1 (same).

Commission has exclusive jurisdiction—remains live, and the parties have a legally cognizable interest in the resolution of those issues. *See Harper*, 562 S.W.3d at 6–7. But the mere existence of a live controversy does not create jurisdiction when other obstacles prevent the court from interceding. *See id.* (noting the many grounds upon which a finding of mootness can rest). Panda's petition for writ of mandamus asks this Court to "reverse the court of appeals' judgment [in *Panda I*], direct the court of appeals to set aside its order mandating dismissal of Panda's claims, reinstate the denial of the plea to the jurisdiction, and remand for further proceedings." But we cannot direct the court of appeals to set aside its "order mandating dismissal of Panda's claims" or direct it to order the trial court to reinstate its interlocutory order denying ERCOT's jurisdictional plea because the trial court has already entered a final judgment to comply with the court of appeals' order, and that judgment is pending on appeal in a separate appellate proceeding. Neither the trial court's interlocutory order nor the court of appeals' order directing the trial court to set aside that order have any remaining effect separate from the trial court's final judgment. *See Coal. of Cities for Affordable Util. Rates v. Third Ct. of Appeals*, 787 S.W.2d 946, 947 (Tex. 1990). We must conclude that the trial court's entry of a final judgment rendered these causes procedurally moot, and the parties must seek final resolution of their pending controversies by appeal from the trial court's final judgment.

To be clear,[16] the court of appeals cannot now set aside its order in *Panda I* and order the trial court to reinstate its earlier order denying ERCOT's plea to the jurisdiction because that order

---

[16] We risk repeating ourselves to provide additional clarity in light of the dissenting Justices' inexplicable assertion that the "Court offers no reason why it cannot" direct the court of appeals to set aside its order mandating dismissal of Panda's claims. *Post* at ___ (HECHT, C.J., dissenting). One may disagree in good faith with the Court's reasoning, but one cannot in good faith simply ignore the reasons and pretend they don't exist.

12

no longer exists as a separate order. The order has been superseded by and has merged into the trial court's final judgment dismissing Panda's claims. *See Bonsmara*, 603 S.W.3d at 390 ("When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment."). Similarly, an order by this Court directing the court of appeals to set aside its order in *Panda I* could have no practical effect because the trial court has already complied with that order by entering its own final judgment. And this Court does not have the power to vacate the trial court's final judgment in this proceeding because Panda is appealing that judgment in *Panda II*, which is currently pending in the court of appeals. Because the court of appeals abated *Panda II*, it has not yet entered a judgment addressing the trial court's final judgment, so of course neither party has petitioned this Court for relief from any such judgment.[17]

_____

[17] The dissenting Justices suggest that we can decide the issues now—even though our decision cannot now affect the trial court's interlocutory order or the court of appeals' judgment in *Panda I*—because our decision will instruct the court of appeals how to decide the issue when it decides *Panda II*. *Post* at ___ (HECHT, C.J., dissenting) ("If we answered here the question of ERCOT's immunity, the court of appeals would decide the pending appeal in accordance with our decision."). But the "judicial power" over *Panda II* currently rests exclusively in the court of appeals, *see United Servs. Life Ins. Co. v. Delaney*, 396 S.W.2d 855, 861 (Tex. 1965) (explaining that "judicial power" is the authority to hear and decide the issues and enter judgment "in accordance with the law as determined by the court"), and we must permit that court to exercise its power "without conflict with the authority confided to another tribunal," including this Court, *Morrow v. Corbin*, 62 S.W.2d 641, 645 (Tex. 1933). Although the constitution grants limited exceptions that allow us to issue such advisory opinions for cases pending in other courts, such as the power to answer certified questions from the federal appellate courts, *see Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 n.6 (Tex. 2020) (discussing TEX. CONST. art. V, § 3-c), no such exception applies here.

The dissenting Justices also argue that rule 27.3 of the Rules of Appellate Procedure "should apply" in this case. *Post* at ___ (HECHT, C.J., dissenting). Rule 27.3 provides that, if a party appeals from a trial court's order or judgment and the trial court later modifies or vacates and replaces that order or judgment with another appealable order or judgment, "the appellate court must treat the appeal as from the subsequent order or judgment." TEX. R. APP. P. 27.3. The rule appears in Section Two of the rules of appellate procedure, which governs "Appeals from Trial Court Judgments and Orders," not in Section Four, which governs "Proceedings in the Supreme Court." Nevertheless, we said in *Roccaforte* that rule 27.3 permitted this Court to "treat [an] interlocutory appeal as an appeal from [a subsequent] final judgment." 341 S.W.3d at 924. But that was because, in that case, *the court of appeals* treated the interlocutory appeal as an appeal from the final judgment. In *Roccaforte*, the trial court entered a final judgment *before* the court of appeals decided the appeal from the trial court's earlier interlocutory order, so rule 27.3 required the court of appeals to treat the interlocutory appeal "as though it were from the final judgment." *Id.* Here, the trial court entered the final judgment *after* the court of appeals had dismissed the interlocutory appeal and granted mandamus relief, and in fact did so to comply with the court of appeals' mandamus order. If the trial court in this case had entered a final

13

Because the trial court's interlocutory order (which gave rise to these consolidated causes) merged into the final judgment, the final judgment is on appeal in a separate proceeding in the court of appeals, and the trial court no longer has plenary jurisdiction over Panda's claims against ERCOT, this Court cannot instruct the trial court to render a new judgment. Nor can we instruct the court of appeals how to resolve *Panda II* without issuing an advisory opinion, because that appeal is not yet before us. We are therefore unable to provide the relief the parties' petitions seek, and any order by this Court would be without practical effect. Therefore, we are compelled to conclude that this proceeding is moot.[18] *See Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 504–05

judgment before the court of appeals decided *Panda I*, rule 27.3 would have required the court of appeals to treat *Panda I* as an appeal from the final judgment, and not from the prior interlocutory order denying ERCOT's jurisdictional plea, which merged into the final judgment. Under those circumstances, the court of appeals would have reviewed the final judgment, rather than the interlocutory order, and we too could review the court of appeals' judgment as the decision in an appeal from the final judgment. But here, the court of appeals could not have treated the interlocutory appeal as an appeal from the final judgment because the appeal was no longer pending when the trial court entered the final judgment, so rule 27.3 could not have applied.

The dissenting Justices suggest that the court of appeals *could have* granted Panda's motion for rehearing before it lost plenary power and then reconsidered the appeal as an appeal from the final judgment. But rule 27.3 certainly did not require the court of appeals to grant rehearing. As it is, the court of appeals did not grant rehearing, presumably because Panda appealed the final judgment as a separate appellate proceeding. With the rare exception of permissible direct appeals, this Court reviews court of appeals' judgments, not trial court judgments, and unlike *Roccaforte*, the court of appeals in this case has not yet reviewed the trial court's final judgment. Rule 27.3, which governs appeals from *trial court* judgments and orders, may permit us to treat an appeal from an interlocutory order as an appeal from the final judgment when the court of appeals did, but it does not permit us to do so when the court of appeals could not. By doing so, we would infringe upon the court of appeals' judicial power by reviewing a judgment the court of appeals has not yet had the opportunity to review.

[18] The dissenting Justices fear "potentially dangerous" results from the Court's decision. *Post* at ___ (HECHT, C.J., dissenting). We do not, because the legislature and our rules have already addressed the Dissent's concern by mandating or providing for a stay of the trial-court proceedings. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8), (b) ("An interlocutory appeal [of an order that grants or denies a plea to the jurisdiction by a governmental unit] also stays all other proceedings in the trial court pending resolution of that appeal."); TEX. R. APP. P. 52.10(a) (permitting mandamus relator to obtain a stay of "any underlying proceedings"). Once ERCOT filed its interlocutory appeal and alternative mandamus petition challenging the trial court's denial of its jurisdictional plea, the parties were entitled to a stay of all proceedings until that appeal was resolved. They sought and obtained a stay while *Panda I* was pending, but the stay was lifted when the court of appeals issued its opinion in *Panda I*. ERCOT claims that it promptly agreed to another stay after the court of appeals issued its decision, but Panda failed to seek that stay before the trial court complied with that decision by entering the final judgment. According to Panda, the trial court entered its final judgment while the parties were "in the process of conferring on a request to stay." In either case, Panda then asked the court of appeals to stay the effect of its order and to require the trial court to vacate its final judgment, but the court of appeals denied that relief. Although the statutory stay is mandatory, parties must seek the stay and object to court

14

(Tex. 1995) (quoting *Holcombe v. Fowler*, 9 S.W.2d 1028, 1028 (Tex. 1928)) (agreeing with plaintiffs that Dow's mandamus petitions "are moot because this Court can never give Dow Chemical the relief it seeks" and stating that "we will not issue mandamus 'if for any reason it would be useless or unavailing'").

The parties note that this case presents circumstances similar to those we addressed in *In re Wood*, 140 S.W.3d 367 (Tex. 2004) (per curiam), *overruled on other grounds by Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518 (Tex. 2019). But as they also acknowledge, *Wood* is distinguishable in one key respect. *Wood* arose from a putative class action a group of former clients filed against their former attorneys. *See id.* at 368. Without deciding whether to certify the proposed class, the trial court entered an order sending the clients' claims to binding arbitration and abating the case pending the arbitration. In response to the clients' motion, the trial court issued a second order clarifying that the arbitrator must decide whether to certify the proposed class. *Id.* The attorneys filed a mandamus petition in the court of appeals challenging the trial court's second order, and the court of appeals granted that petition and ordered the trial court to vacate its second order and decide the class-action issues. *Id.*; *see In re John M. O'Quinn, P.C.*, 155 S.W.3d 195, 198, 202 (Tex. App.—Tyler 2003, orig. proceeding). The trial court's third order vacated its second order as the court of appeals had instructed. *Wood*, 140 S.W.3d at 368. The court of appeals then issued an order dismissing the attorneys' mandamus proceeding as moot. *See*

actions in violation of the stay. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 n.1 (Tex. 2019) ("While trial court action taken in violation of the stay is voidable, it is not necessarily void."); *Roccaforte*, 341 S.W.3d at 923–24 (stating that the entry of a final judgment while an interlocutory appeal is pending in violation of the mandatory stay is "voidable, not void"). Here, neither party has ever complained to this Court that the trial court or the court of appeals erred or abused its discretion by failing to stay the proceedings below. Instead, Panda appealed the final judgment to the court or appeals. In any event, the danger the dissenting Justices fear—that crafty courts of appeals can preclude our review of their decisions—does not present itself in this case because we will review the court of appeals' decision on appeal from the trial court's final judgment.

*In re O'Quinn*, No. 12-02-00352-CV, 2003 WL 21571427, at *1 (Tex. App.—Tyler July 10, 2003, orig. proceeding) (mem. op.).

The clients filed a mandamus petition in this Court, challenging the court of appeals' order granting mandamus relief and requiring the trial court to vacate its second order. *Wood*, 140 S.W.3d at 368. In response, the attorneys argued that the trial court's entry of its third order (which vacated its second order) mooted the clients' mandamus petition in this Court, because the mandamus petition challenged the court of appeals' judgment addressing the trial court's second order. *Id.* at 370. We disagreed and held that the proceeding was not moot, despite the trial court's entry of its third order, because a live controversy remained over whether the court of appeals abused its discretion by ordering the trial court to vacate its second order, and our resolution of that controversy required us to decide whether the trial court abused its discretion by entering the second order. *Id.*

In the same way, here, despite the trial court's entry of its final judgment, a live controversy exists over whether the court of appeals erred by ordering the trial court to vacate its interlocutory order denying ERCOT's jurisdictional plea, even though our resolution of that issue requires us to decide whether the trial court erred by entering that interlocutory order. But we could grant effective relief in *Wood* because the trial court retained plenary jurisdiction over the case after entering its third interlocutory order. Here, we cannot grant effective relief because the trial court lost plenary jurisdiction thirty days after it entered its final judgment granting ERCOT's jurisdictional plea and dismissing Panda's claims. The trial court here no longer has the power to act. *See* TEX. R. CIV. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review . . . ."). If it did

act, its action would be void. *See Travelers Ins. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (quoting *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)) ("A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act."). We have no authority to order a court to perform a void act.

Finally, we note that the fact that these consolidated causes include a petition seeking mandamus relief does not alter our analysis. Our mandamus power does not authorize us to decide moot cases or issues any more than our power of appellate review. *See, e.g., In re State*, 489 S.W.3d 454 (Tex. 2016) (dismissing mandamus proceeding as moot); *In re Uresti*, 377 S.W.3d 696, 697 (Tex. 2012) (per curiam) (same); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 94 (Tex. 1997) (same); *Garcia*, 909 S.W.2d at 505 (same). And as we have said time and again, including quite recently, we will not exercise our mandamus jurisdiction if the parties have an adequate remedy by appeal. *See, e.g., In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 56 (Tex. 2019) (orig. proceeding); *In re Turner*, 591 S.W.3d 121, 124 (Tex. 2019) (orig. proceeding).[19] Mandamus is meant for circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Murrin Bros.*, 603 S.W.3d at 57 (quoting *Walker*, 827 S.W.2d at 840). An appeal is inadequate "when parties are in danger of permanently losing substantial rights," which occurs when "the appellate court would not be able to cure the error,

---

[19] We do not suggest that this fundamental limitation on our mandamus power is jurisdictional. But our mandamus power does not permit us to review a court of appeals judgment addressing a trial court order when a subsequent judgment has rendered those orders moot, or when a pending appeal from that judgment indisputably provides an adequate remedy. Although we are of course fully aware of the distinction between a mandamus writ and a judgment on appeal, that distinction is illusory here because either one would have to instruct the court of appeals to instruct the trial court to vacate an interlocutory order that no longer exists, and to do so after the trial court has lost its plenary power to act.

17

when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made part of the appellate record." *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding). Because *Panda II* is fully briefed and argued in the court of appeals—and has been abated pending only an order from this Court on these petitions—we cannot say that the parties lack an adequate appellate remedy here. Although this "Court may consider whether mandamus can spare the litigants and public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings,'" *In re Keenan*, 501 S.W.3d 74, 76 (Tex. 2016) (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004)), the time and money has already been expended here. This Court can do little now to ameliorate that concern.

We are not insensitive to the importance of the issues these consolidated causes present. Indeed, as we said long ago when faced with similar limitations on our own jurisdiction, "[i]n view of the importance of the questions involved . . . , we regret that [our] jurisdiction . . . has not been invoked in a constitutional way, so that we might have assisted in their solution at this time." *Morrow*, 62 S.W.2d at 651. Nor are we insensitive to the parties' desire to have those issues resolved in this proceeding. Jurisdictional limitations, as we once observed, can impose a cumbersome procedural process that seems "rather like burning a house to roast a pig." *Delaney*, 396 S.W.2d at 864. But our lack of jurisdiction over moot cases is a mandate of the constitution, not a matter of convenience. *See Patterson*, 971 S.W.2d at 442–43. Just as in *Morrow* and *Delaney*, we must respect our own constitutional limitations, however much we may prefer to resolve the issues here, because "neither we nor the legislature can create jurisdiction the Constitution does not permit." *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 174 (Tex. 2018) (BOYD, J., dissenting).

18

We hold that the trial court's entry of a final judgment mooted Panda's mandamus petition. It has likewise mooted the need for ERCOT's conditional petition for review, which seeks relief on the condition that this Court accept Panda's mandamus petition. As ERCOT itself notes in its petition, if this Court lacks jurisdiction over Panda's mandamus petition, "the need for [ERCOT's] conditional petition would be obviated."

## III.
## Conclusion

The trial court's entry of a final judgment rendered these causes arising from an interlocutory order moot. We therefore dismiss both the mandamus petition and the conditional petition for review for want of jurisdiction.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: March 19, 2021